(22 Misc. Rep. 477.)

PEOPLE ex rel. NEWBURGH SAV. BANK v. PECK et al.

(Supreme Court, Special Term, Orange County. January, 1898.)

1. TAXATION—EXEMPTION—SAVINGS DEPOSITS.
    The exemption from taxation in Laws 1896, c. 908, § 4, subd. 14, of "the deposits in any bank for savings which are due depositors," includes the surplus fund accumulated under Banking Law 1892, c. 689, § 123, which is accumulated for the security of such depositors, and "to meet any contingency or loss in the business from the depreciation of its securities or otherwise."

2. STATUTES REPEAL AND REVIVAL.
    Laws 1866, c. 761, subjected to taxation the privileges and franchises of savings banks, the value of which was to be measured by their surplus earnings. Laws 1867, c. 861, amended the same by permitting the amount invested in United States securities to be deducted from the surplus. Laws 1875, c. 371, repealed both the first-named acts, and Laws 1882, c. 402, expressly repealed Laws 1875, c. 371, and Laws 1866, c. 761, but did not repeal Laws 1867, c. 861. Held, that the act of 1882. repealing the act of 1875, which repealed the act of 1866, did not revive the last-named act as an independent statute, creating a tax on privileges and franchises, as the repeal of the act of 1866, creating a tax, would carry with it an amendment conferring an exemption.

3. SAME—REPEAL BY IMPLICATION.
    When a general revision covering the whole subject-matter of taxation is effected, it virtually repeals prior enactments by implication.

Certiorari on the relation of the Newburgh Savings Bank against George W. Peck, assessor of the city of Newburgh, and others, to review an assessment of personal property for taxation. Assessment vacated.

Brown & Cassedy (Charles F. Brown and George W. Wickersham, of counsel), for relator.
C. L. Waring, Corp. Counsel, for respondents.

HIRSCHBERG, J. This is a trial of the issues raised by the respondents' return to a writ of certiorari granted for the purpose

of reviewing an assessment of the relator's personal property in the sum of $414,849.01. It appears that the assessor of the city of Newburgh, in July, 1897, assessed the relator as the owner of personal property of the value of $1,176,849.01, basing his action upon the contents of the report made by the relator to the superintendent of banks as of January 1st of that year. In this report the resources of the relator were stated to be:

| | | |
|---|---:|---:|
| Bonds and mortgages | | $2,516,000 00 |
| Stock investments (par value, $3,339,191.37), market value | | 3,800,702 37 |
| Banking house (cost, $115,527.16), present value | | 50,000 00 |
| Other real estate (cost, $15,000), present value | | 16,531 82 |
| Cash on deposit | $421,461 77 | |
| Cash on hand | 34,582 86 | |
| | | 456,044 63 |
| Accrued interest | | 97,011 91 |
| | | |
| Total resources | | $6,936,290 73 |

—And its liabilities to be:

| | | |
|---|---:|---:|
| Principal due depositors | $5,653,540 66 | |
| Interest credited to depositors | 105,901 06 | |
| | | 5,759,441 72 |
| | | |
| Showing an apparent surplus of | | $1,176,849 01 |

In August, following, the board of review, on complaint of the relator, reduced the assessment as above indicated, by deducting the sum of $762,000, such deduction being the aggregate of two items, viz. $712,000, as the market value of United States bonds, included in the amount of stock investments, embraced in the report, and $50,000, the value of the banking house.

On the trial, the relator contended—First, that its surplus fund was exempted from taxation by law; and, second, that, if such fund were taxable, there were various deductions to which it was entitled other than those allowed by the board of review. A determination of the first claim in favor of the relator renders the examination of the second one unnecessary.

By section 3 of the tax law (chapter 908 of the Laws of 1896) it is provided that "all real property within this state, and all personal property situated or owned within this state, is taxable unless exempt from taxation by law." Section 4 of the same act enumerates the exemptions, among which is subdivision 14, which exempts "the deposits in any bank for savings which are due depositors, the accumulations in any domestic life insurance corporation, held for the exclusive benefit of the insured, other than real estate and stocks, now liable for taxation; and the accumulations of any incorporated co-operative loan association upon the shares of such association held by any person." This subdivision groups three distinct exemptions, two of which are in terms "accumulations"; and the relator contends that the deposits referred to are designed to include, not only the sums charged against the bank in its depositors' pass books, but also the surplus fund accumulated by it under section 123 of the banking law (chapter 689 of the laws of 1892), and which is accumulated, as stated in the act,

for the security of such depositors, and "to meet any contingency or loss in its business from the depreciation of its securities or otherwise." This contention is, in effect, that the fourteenth subdivision deals with accumulations, which are for the exclusive benefit of the insured, of the shareholders in co-operative loan associations, and of the depositors in savings banks, all being akin in character, and the accumulations in the latter case being regarded as within the spirit and equity of the exemption of the specific deposits from which such accumulations arise.

The respondents appear to have been largely influenced, if not controlled, in making the assessment, by the decision of the court of appeals in the case of People ex rel. Savings Bank of New London v. Coleman, 135 N. Y. 231, 31 N. E. 1022. In that case the question before the court was whether a foreign savings bank was taxable upon its surplus invested in this state. The court assumed that such a bank was to be treated precisely as if it were a domestic corporation, and consequently entitled to all the exemptions of the tax laws of this state. The exemption was claimed under the terms of chapter 456 of the Laws of 1857, which are substantially the same as in the existing tax law. The court held that such exemption applied only to the deposits for which the bank was then liable, and did not extend to the surplus. Chief Judge Earl, writing the opinion of the court, held that the exemption of the deposits was only in favor of the bank, and that such deposits were, notwithstanding the exemption, still taxable as against the depositors. Judge Finch concurred in the opinion, but the other five judges concurred only in the result "on the ground that the shares of stock assessed were part of the bank's surplus," but expressed "no opinion as to the taxation of depositors on account of their deposits in savings banks." The court was therefore apparently unanimous in holding that under the exemption in the act of 1857, substantially similar in terms to the exemption now under consideration, a domestic savings bank was taxable upon its surplus fund, and that a foreign savings bank, while allowed all the exemptions which were conferred upon domestic institutions, was, nevertheless, properly taxable upon so much of its surplus fund as was invested in this state. Following this decision, the appellate division of the First department in the case of People ex rel. Groton Savings Bank v. Barker, 19 App. Div. 64, 45 N. Y. Supp. 811, upheld an assessment of a foreign savings bank on bank stocks held by it in this state. That case, however, was unanimously reversed by the court of appeals in October, 1897 (154 N. Y. 122, 47 N. E. 1103); and the authority of the prior decision was limited to the facts contained in the record in that case, and to the questions of law raised on its submission. It is to be noted that both cases related to savings banks organized under the laws of the state of Connecticut, and that Judge O'Brien, who writes for the court in the later case, was one of the judges who concurred only in the result in the former one. Referring in the opinion written in the Groton Bank Case to the decision in the New London Bank Case, he said:

"The result in that case very evidently proceeded upon the assumption that the surplus of a savings institution is not in any sense an obligation due to the depositors. So far as appears, there was nothing in that case to show that the depositors had any interest whatever in the surplus, or that they could ever be entitled to any part of it. It was treated as a part of the property of the corporation itself, quite independent of any interest in the depositors. By the fourth section of chapter 456 of the Laws of 1857, 'the deposits in any bank for savings which are due to depositors, and the accumulations of any life insurance company organized under the laws of this state, so far as the said accumulations are held for the exclusive benefit of the assured, shall not be liable to taxation, other than the real estate and stocks which may be owned by such bank or company, and which are now liable to taxation under the laws of the state.' Under this statute, it was held in the case referred to that the deposits in savings banks were exempt from taxation against the bank. The bank stock of the relator was undoubtedly subject to taxation, but the assessment was subject to be offset by the debts and liabilities which it owed to depositors; and the question here is whether the surplus of the relator was such a debt or obligation. It would seem that, in the decision of the above case, the court assumed that depositors in savings banks have no interest in the surplus, and, as before stated, there was nothing in the record to the contrary, and, indeed, the question was not raised in that case. The facts in this case, however, are quite different, since it appears by the legislative charter itself, under which the relator exists as a corporation, that the income or profit which it derives from investments is to be divided among the persons making the deposits, their executors or administrators, and in just proportion, with such reasonable deduction as may be chargeable thereon. It also appears by the general statute of Connecticut regulating the operations of savings banks that the net income of any savings bank in excess of a sum equal to one-eighth of 1 per cent. of its deposits actually earned during the six months last preceding, and no more, may be semiannually divided among the depositors, but that no such dividend shall be made until the surplus shall have accumulated to an amount equal to 3 per cent. of its deposits; that such accumulation shall be kept as a contingent fund to the extent of 10 per cent. of its deposits, and any surplus beyond that shall be divided among the depositors entitled to such dividends, in sums of not less than 1 per cent. of its deposits. It is apparent from these statutes that the profits of savings banks, under the laws which governed the obligations and duties of this relator, belong in equity to the depositors, and are a part of the deposits, in the same sense that the stipulated interest is or may be. It is true that they are not payable at the same time, or in the same way, and that they may be held by the bank as a fund until they have reached the specified amount. This is for the purpose of security to the depositors against unforeseen contingencies. But, in the end, under the general spirit and purpose of the statutes, the depositors, their personal representatives or assigns, would be entitled, in equity, to the pecuniary benefits of such accumulated profits. The so-called 'surplus' is therefore within the equity of the statute exempting depositors of savings banks from taxation. This surplus fund is a debt or obligation due to depositors, just as much as the accumulated interest stipulated to be paid to them. There is no more reason, under these circumstances, for taxing the surplus fund of a savings bank than the accumulations of a life insurance company held for the exclusive benefit of the assured. The exemption in both cases is expressed in the same section of the statute, and in the same sentence; and, in ascertaining the real condition of a savings bank for the purpose of such taxation as was made in this case, the surplus of the relator should not only have been included among its assets, but among its liabilities and obligations as well."

I have quoted this opinion at length, because the court elsewhere lays stress upon the fact that it is "not concerned with the question whether, under the laws of this state in regard to savings banks, such surplus is taxable or not." It was unnecessary there to consider the scope or meaning of the provisions of our laws as to the accumulation of surplus profits. It is necessary, however,

to consider them in this case, for the purpose of ascertaining whether they are so similar in spirit and effect to those in Connecticut as to render the reasoning of the court of appeals in the Groton Bank Case controlling in the decision of this one. As before stated, the provision for the accumulation of a surplus fund is contained in section 123 of the banking law. It provides that the trustees of every savings bank "shall regulate the rate of interest or dividends not to exceed 5 per centum per annum upon the deposits therewith, in such manner that depositors shall receive as nearly as may be, all the profits of such corporation, after deducting necessary expenses and reserving such amounts as the trustees may deem expedient as a surplus fund for the security of the depositors, which to the amount of 15 per cent. of its deposits, the trustees of any such corporation may gradually accumulate and hold, to meet any contingency or loss in its business from the depreciation of its securities or otherwise." The same section further provides that "the trustees of any such corporation whose surplus amounts to 15 per cent. of its deposits, at least once in three years, shall divide equitably the accumulation beyond such authorized surplus as an extra dividend to depositors, in excess of the regular dividend authorized." It seems to me beyond contention that these provisions impress the surplus fund of a domestic savings bank with the character of a debt or obligation due to the depositors in the same sense and to an equal degree as was asserted in the Case of the Groton Bank. It is to be borne in mind that the relation of the depositors and a savings bank is that of debtor and creditor. People v. Mechanics' & Traders' Sav. Inst., 92 N. Y. 7; Fowler v. Bank, 113 N. Y. 450, 21 N. E. 172; Jemison v. Bank, 122 N. Y. 135, 25 N. E. 264. The bank has no capital or stock and no funds or resources of any kind excepting the money of its depositors and the increase of such money by investment. The function which the bank is to discharge is to invest judiciously the money received from its depositors, and to repay them as an entire class the whole amount so received, together with the earnings, subject only to the expenses of administration. The bank is, in effect, an incorporated trustee, serving without commissions, and the depositors are the sole beneficiaries. By statute, the bank is directed to so regulate the rate of interest payable on the deposits that the depositors shall receive "all the profits" of the institution. The bank is not imperatively directed as under the Connecticut law, but is authorized to reserve as a surplus fund such amount, not exceeding 15 per cent. of the deposits, as the trustees may deem expedient. The accumulations beyond such surplus fund are to be paid to the depositors by way of extra dividends; and the surplus fund is not to be accumulated with a view of depriving the depositors of their equitable ownership in it, but, on the contrary, it is to be held by the bank for their exclusive benefit in order to meet any contingency, loss, or depreciation which might otherwise deprive the depositors of the amounts due them. Regarding the depositors as a class, it is evident that this surplus fund is as much an obligation of the bank to them as are the sums paid in and credited on the

pass books. On the dissolution of the bank, its distribution among such depositors would be decreed by a court of equity in accordance with settled principles regulating trust funds; but, while the surplus is held by the bank as the legal owner, the law recognizes and protects the interests of the depositors as the equitable owners. Every dollar received by the bank, and not required to meet lawful expenses, is owing to the depositors; and, while some of it may be held until it reaches the specified amount, yet, "in the end, under the general spirit and purpose of the statutes," in the language of Judge O'Brien, "the depositors, their personal representatives or assigns, would be entitled, in equity, to the pecuniary benefits of such accumulated profits." Any other view would charge the legislature with providing for double taxation of the surplus funds of savings banks. By chapter 761 of the Laws of 1866, it was enacted, in section 7, that "the privileges and franchises granted by the legislature of this state, to savings banks or institutions for savings, are hereby declared to be personal property and liable to taxation as such in the town or ward where located, to an amount not exceeding the gross sum of their surplus earned," etc. This law remained in effect several years, during all of which time the exemption of deposits from taxation under the Law of 1857 was in force. If such exemption left the surplus fund liable to taxation on the ground that it was not included in the words "deposits in any bank for savings which are due to depositors," then this fund was taxable both as a fund and also as the measure of value of a franchise. A construction is to be favored which avoids such an injustice, and the conclusion is inevitable that when the legislature provided, in 1866, for the taxation of the surplus as a franchise, it did not regard such fund already taxable, under the provisions of the act of 1857.

The learned counsel for the respondents further claims that, even if it be held that the surplus of the relator is not taxable as personal property, it is nevertheless taxable as a franchise, under chapter 861 of the Laws of 1867, by which act section 7 of the act of 1866, above referred to, was amended, and that, accordingly, the tax under review may be upheld as a tax upon the franchise of the relator. It certainly was not assessed as such; but, waiving the question whether a tax levied as upon one kind of property may be enforced as a tax upon another and distinct kind, I do not think the contention sound. Chapter 761 of the Laws of 1866 is entitled "An act authorizing the taxation of stockholders of banks and the surplus funds of savings banks." It consisted of seven sections, the last of which, as has been said, related to the taxation of the "privileges and franchises" of savings banks. As originally passed, the law permitted no deduction for the amount of United States bonds held by the banks. Chapter 861 of the Laws of 1867 amended the act of 1866 by providing that section 7 should be "amended so as to read as follows," and, in the re-reading of the section, inserted words permitting the amount invested in United States securities to be deducted from the surplus. The whole scope and purpose of the amendatory act was to grant the deduction

specified. In 1875, by chapter 371 of the Laws of that year, both the acts of 1866 and 1867 were repealed as a part of a revision designed to conform the charters of savings banks to a uniformity of powers, rights, and liabilities. By chapter 409 of the Laws of 1882, the statutes of the state relating to banks, banking and trust companies were again revised; and accompanying that act, and passed on the same day, was chapter 402 of the Laws of 1882, repealing certain acts and parts of acts. Chapter 402 expressly repealed chapter 371 of the Laws of 1875, and also expressly repealed chapter 761 of the Laws of 1866, but did not repeal chapter 861 of the Laws of 1867, amending the law of 1866 in the matter of the government securities. The contention now is that by the repeal of the law of 1875, which repealed the law of 1867, the latter act is revived. I do not think such a result follows, at least not to the extent of reviving the act of 1867 as an independent statute creating a tax on privileges and franchises. The manifest intent to be gathered from the action of the legislature was to destroy the act which created the tax, without regard to subsequent intervening legislation which merely operated to reduce the amount of such tax. The repeal of an act creating a tax should certainly carry with it an amendment conferring an exemption. As has been said, the law of 1882 was a revision of existing statutes; and the rule is a familiar one that where a general revision of statutes is effected, covering the whole subject-matter, the revision is deemed to contain the entire law on the subject, and to virtually repeal former enactments. In re New York Institution for Instruction of Deaf and Dumb, 121 N. Y. 234, 24 N. E. 378. The banking law of 1892 was another such general revision, and article 3, which assumes to embrace the law regulating savings banks, in no way indicates the revival of the law under consideration. Moreover, the tax law of 1896, which was the result of a complete and general revision of the statutes of the state upon the subject of taxation, not only fails to embrace within its provisions the tax on franchises assumed to have been revived by the revival of the law of 1867, but develops in article 9 a complete scheme for a franchise tax on corporations, and by section 183 expressly exempts savings banks from the payment of such tax.

It follows from the views herein set forth that the assessment in question should be vacated and set aside, as illegal and unauthorized. Ordered accordingly.